United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

M.M.,

Plaintiff,

v.

FRANK BISIGNANO,

Defendant.

Case No. 25-cv-02900-VKD

**ORDER RE SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 17, 23, 26

This is the third appeal filed by plaintiff M.M.[1] challenging a final decision of the Commissioner of Social Security ("Commissioner")[2] denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*. The present appeal follows administrative proceedings conducted after a February 13, 2024 remand order entered by Judge Rita F. Lin at the parties' request. *See* AR[3] 3463-3464 (Case No. 3:23-cv-04091-RFL, Dkt. No. 18).

M.M. contends that in reaching his January 27, 2025 post-remand decision, the administrative law judge ("ALJ") failed to properly assess the materiality of M.M.'s substance use disorder and erred in his evaluation of certain medical opinions. The Commissioner maintains that

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[3] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 12.

United States District Court
Northern District of California

the ALJ's decision is supported by substantial evidence and free of legal error.

The parties have filed their respective briefs. Dkt. Nos. 17, 23, 26. The matter was submitted without oral argument. Civil L.R. 16-5. Upon consideration of the papers, the relevant evidence of record, and the applicable law, for the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for calculation of benefits consistent with this order.[4]

## I. BACKGROUND

### A. M.M.'s Relevant History

The record indicates that M.M. suffered physical and emotional abuse both as a child and as an adult. *See* AR 3972. She completed the eleventh grade but did not graduate high school. *See* AR 1818, 3424, 4127, 4879. Her past relevant work includes work as an in-home caregiver. *See* AR 2230-2231, 2234-2235, 3375, 3406. As of November 5, 2024, M.M. reported that she was working part-time as an in-home caregiver. AR 3402-3403.

M.M. was 37 years old when she applied for Title II benefits on February 22, 2016 and Title XVI benefits on May 23, 2016, alleging disability beginning December 31, 2012 due to anxiety, bipolar disorder, depression, mania, and back pain. AR 223-224, 237-238, 251, 252. M.M.'s applications were denied initially and on review. AR 223-236, 237-250, 253-272, 273-292.

Multiple hearings have been held regarding M.M.'s applications for benefits. AR 1948-2001 (Sept. 18, 2018 hearing transcript); AR 1813-1892 (Feb. 14, 2023 hearing transcript); AR 3391-3460 (Nov. 5, 2024 hearing transcript). Two different ALJs issued unfavorable decisions, the most recent of which is at issue here. AR 28-43 (Dec. 7, 2018 decision); AR 1740-1765 (June 7, 2023 decision); AR 3343-3376 (Jan. 27, 2025 decision). In two previous actions, two different judges in this District remanded the case to the Commissioner for further administrative action at the parties' request. AR 1938-1939 (No. 20-cv-00958-JCS); AR 3463-3464 (No. 23-cv-04091-RFL).

[4] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 10.

The Appeals Council, in turn, remanded the case each time for a new hearing. AR 1940-1947, 3466-3473. In its most recent remand order on April 1, 2024, the Appeals Council found that the ALJ's drug addiction and alcoholism materiality analysis "was not fully developed" because "the decision does not appear to have separated out periods when the claimant was not using substances." AR 3468. The Appeals Council observed that M.M. "was essentially sober for most of the period from 2017 going forward, with possibly a brief relapse in 2021." AR 3469. The Appeals Council also found that the ALJ erred in his materiality analysis because he did not consider M.M.'s "extremely low memory function on testing" when noting inconsistencies in M.M.'s reporting, and because he cited M.M.'s activities of daily living "but did not explain how these basic activities, including light chores and simple meals, were inconsistent with the claimant's testimony or indicated an ability to perform full-time work." *Id*. The Appeals Council also noted that the ALJ erred in characterizing M.M.'s school and work history. *Id.*

Considering the medical opinions by Drs. William Mains, M.D., Lesleigh Franklin, Ph.D., Paul Martin, Ph.D., Katherine Wiebe, Ph.D., and Laura Catlin, Psy.D., the Appeals Council criticized the ALJ's evaluation as "incomplete." *Id*. The Appeals Council explained:

> All of these opinions were rendered during periods of the claimant's sobriety and either assessed multiple marked to extreme limitations or essentially opined that the claimant was incapable of maintaining regular attendance at work. The Administrative Law Judge gave these opinions "some weight" including the effects of substance abuse but "no weight" or "little weight" excluding substance abuse. However, the decision used much of the analysis from the first discussion of these opinions without explanation as to why the same opinion was assigned different weights in the same decision. The decision also cited generally to exhibits in the record, without pinpoint citation, in finding that the opinions were inconsistent with mental status examinations. There was no delineation between periods where the claimant was abusing substances and periods where she was abstinent.

AR 3469-3470 (citations omitted). The Appeals Council instructed the ALJ to (1) "[c]onduct the further proceedings required to determine whether drug addiction and alcoholism are contributing factors material to the finding of disability" and (2) "[g]ive further consideration to the treating and nontreating source opinions . . . pursuant to the provisions of 20 CFR 404.1527 and 416.927,

United States District Court
Northern District of California

and explain the weight given to such opinion evidence." AR 3470.

Pursuant to the Appeals Council's remand order, the ALJ held a hearing on November 5, 2024, at which M.M. and a vocational expert testified. AR 3391-3460. On January 27, 2025, the ALJ issued a new decision, again finding that M.M. is not disabled. AR 3343-3376.

**B. ALJ's Decision**

On February 28, 2020, M.M. filed another application for Title II and Title XVI benefits. *See* AR 1945. Pursuant to a prior Appeals Council order, the ALJ consolidated the claims with M.M.'s claims filed in 2016. AR 3343. The ALJ found that M.M.'s earnings records showed that she engaged in substantial gainful activity during a period of approximately two and one-half years since the December 31, 2012 alleged onset date—specifically, in 2019, 2020, and the first half of 2021. AR 3347. The ALJ also found that M.M. did not engage in substantial gainful activity from 2014 to 2018 and from the second half of 2021 to 2023. AR 3349-3350, 3359. At the November 5, 2024 hearing, M.M. testified that "she currently works part-time for Care Solutions." AR 3348. Despite the ALJ's request for further evidence of M.M.'s earnings in 2024 and 2025, M.M. did not provide evidence of her recent earnings. AR 3348-3349. Nevertheless, the ALJ resolved the matter in favor of M.M. by finding that she did not engage in substantial gainful activity in 2024 and the first month of 2025. AR 3349-3350.

The ALJ found that M.M. has the following severe impairments: schizophrenia, bi-polar type; depressive disorder; anxiety disorder; post-traumatic stress disorder ("PTSD"); scoliosis of the lumbar spine; residual effects of remote right ankle fracture; and polysubstance abuse disorder. AR 3350. The present appeal focuses on M.M.'s mental impairments. M.M. does not challenge the ALJ's findings concerning her physical impairments. The ALJ concluded that, with substance use, M.M.'s mental impairments "met the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 416.920(d), 416.925)."[5] AR 3351.

In making that finding, the ALJ "adopt[ed] the general finding made by the Appeals

[5] The listings for mental disorders are arranged by categories. Listing 12.03 concerns schizophrenia spectrum and other psychotic disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.1.

Council that the claimant was frequently using substances in the early part of the period at issue and was essentially sober for most of the period from 2017 going forward, with a possible brief relapse in 2021." *Id*. The ALJ considered whether M.M.'s impairments satisfy the paragraph A and paragraph B criteria of listing 12.03.[6] AR 3351-3355. The ALJ found that the paragraph A criteria were satisfied "based on the medical evidence of record showing medical documentation of a formally diagnosed disorder on the schizophrenia spectrum . . . ." AR 3352. The ALJ found that the paragraph B criteria were satisfied because M.M. had moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace, and had marked limitations in interacting with others and in adapting or managing oneself. AR 3354. In making these findings, the ALJ assigned "some weight" to medical opinions by Drs. Mains, Franklin, and Martin. AR 3357-3358.

However, the ALJ determined that if M.M. stopped substance use during the relevant time period, her symptoms would improve, and she would not have any impairment that met or medically equaled the severity of a listed impairment. AR 3358-3365. Specifically, with respect to the paragraph B criteria of listing 12.03, the ALJ found that without substance use, M.M. had only a mild limitation in adapting or managing oneself and moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. AR 3363-3364. The ALJ also found that the paragraph C criteria of listing 12.03 were not satisfied when M.M. stopped substance use. AR 3364. For the period starting in 2017, the ALJ assigned only "partial weight" to the medical opinions by Drs. Mains, Martin, and Catlin, and "little weight" to the medical opinions by Drs. Franklin and Wiebe. AR 3369-3373.

Based on this assessment, the ALJ found that M.M. had the residual functional capacity ("RFC") to perform "light work," with the following limitations:

> [T]he claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can stand and/or walk for a

---

[6] Listing 12.03 has three paragraphs, designated A, B, and C; a claimant's mental disorder must satisfy the requirements of both paragraphs A and B or the requirements of both paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.2.

> total of six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant can frequently climb ramps and stairs; and frequently balance, stoop, kneel, crouch and crawl; but never climb ladders, ropes or scaffolds. The claimant can perform low stress work, which is defined as simple, routine tasks involving simple work-related decisions and occasional workplace changes that require only occasional interaction with the public on either the telephone or in-person. Additionally, the claimant can occasionally interact with co-workers with no teamwork. The claimant cannot perform fast-paced work, such as assembly line work.

AR 3365. The ALJ found that while M.M. has past relevant work as a home attendant, babysitter, and companion, she is unable to perform any past relevant work. AR 3375. The ALJ found that if she stopped substance use, she can perform at least three jobs that exist in significant numbers in the national economy: sub-assembler, routing clerk, and marker. AR 3375-3376.

The ALJ concluded that M.M. "would not be disabled if she stopped the substance use," that her "substance use disorder is a contributing factor material to the determination of disability," and that she had not been disabled "at any time from the alleged onset date through the date of this decision." AR 3376.

On March 28, 2025, M.M. filed the present action seeking judicial review of the ALJ's January 27, 2025 decision denying her applications for benefits.[7] *See* Dkt. No. 1.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal

[7] Once the ALJ issues a decision after remand from the district court, the plaintiff may, within 30 days of the ALJ's decision, file exceptions with the Appeals Council. 20 C.F.R. §§ 404.984(b)(1), 416.1484(b)(1). Even if the plaintiff does not file exceptions, the Appeals Council may, within 60 days of the ALJ's decision, take jurisdiction of the case *sua sponte*. *Id.* §§ 404.984(c), 416.1484(c). It does not appear from the record that M.M. filed any exceptions to the ALJ's decision, or that the Appeals Council took jurisdiction of the case within 60 days. Consequently, the ALJ's decision became the final decision of the Commissioner 60 days after it was issued. *See id.* §§ 404.984(d), 416.1484(d) ("If no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the administrative law judge becomes the final decision of the Commissioner after remand.").

standards. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted). In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

**B. Drug Addiction and Alcoholism ("DAA") Analysis**

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). In cases involving DAA, the ALJ is required to apply the five-step sequential disability analysis twice. Social Security Ruling ("SSR") 13-2P, 2013 WL 621536, at *6 (Feb. 20, 2013); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). At the first stage of the DAA analysis, the ALJ conducts the five-step sequential analysis and determines whether the claimant is disabled based on all of the claimant's medically determinable impairments, including DAA. *Bustamante*, 262 F.3d at 955; SSR 13-2P, 2013 WL 621536, at *6. If the ALJ determines that the claimant's impairments, including DAA, are not disabling, then the inquiry ends, and the ALJ need not determine whether DAA is material to the determination of disability. *Bustamante*, 262 F.3d at 955; SSR 13-2P, 2013 WL 621536, at *5-6. If the ALJ finds that the claimant is disabled, and there is medical evidence of DAA, then the ALJ proceeds to the second stage of the DAA analysis, and applies the five-step sequential analysis a second time to determine whether DAA is "material" to the disability determination.

SSR 13-2P, 2013 WL 621536, at *6. "'Materiality' is the degree to which an individual would still be found disabled if they stopped using drugs or alcohol." *Jessie L. v. Kijakazi*, No. 20-cv-09305-DMR, 2022 WL 2222964, at *2 (N.D. Cal. June 21, 2022); 20 C.F.R. §§ 404.1535(b), 416.935(b).

At the second stage of the DAA analysis, implementing regulations require an ALJ to "determin[e] which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *see also* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."); SSR 13-2P, 2013 WL 621536, at *4 (same). "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra*, 481 F.3d at 747. However, "[i]f the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability." *Id.*; *see also* SSR 13-2P, 2013 WL 621536, at *9 ("We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.").

"[W]hen evidence exists of a claimant's drug or alcohol abuse, the claimant bears the burden of proving that his substance abuse is not a material contributing factor to his disability." *Parra*, 481 F.3d at 744-45; *see also id.* at 748. "All adjudicators must provide sufficient information in their determination or decision that explains the rationale supporting their determination of the materiality of DAA so that a subsequent reviewer considering all of the evidence in the case record is able to understand the basis for the materiality finding and the determination of whether the claimant is disabled." SSR 13-2P, 2013 WL 621536, at *2.

**C. Medical Opinions**

The Commissioner's rules and regulations regarding the evaluation of medical evidence were revised in March 2017. The revised rules apply to claims filed on or after March 27, 2017.

*See* 20 C.F.R. §§ 404.1520c, 416.920c. For claims filed before March 27, 2017, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply. *Id.* Because M.M.'s claims were filed before March 27, 2017, the Court applies the rules then in effect under 20 C.F.R. §§ 404.1527, 416.927.[8]

For claims filed before March 27, 2017, each of the three types of medical opinions—treating, examining, and non-examining—is accorded different weight based on a "three-tiered hierarchy." *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022) (describing weighted analysis under "three-tiered hierarchy" that applies to pre-March 27, 2017 applications); 20 C.F.R. §§ 404.1527, 416.927. In the first tier are treating physicians, whose opinions are generally given more weight than the opinions of those who do not treat the claimant. *See Woods*, 32 F.4th at 789. A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In the second tier are physicians who examine, but do not have an ongoing relationship with, the claimant. *Woods*, 32 F.4th at 789. "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise, and the reasons must be supported by substantial evidence." *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). In the third tier are physicians who "only review the record." *Id.* (internal quotations and citation omitted). A non-examining physician's opinion is not, by itself, substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

[8] The pre-March 2017 regulations apply to M.M.'s consolidated application even though M.M.'s second application for Title II and Title XVI benefits was filed on February 28, 2020. *See* Hearing, Appeals, and Litigation Law (HALLEX) Manual I-5-3-30, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 1362776, at *4 ("If the subsequent application(s) is filed on or after March 2017 and the pending application(s) is filed before March 27, 2017, adjudicators will apply the prior rules to the consolidated case."); *Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *1 n.1 (9th Cir. July 15, 2025) (applying pre-March 2017 regulations where plaintiff filed an additional claim in 2019 which was consolidated with claim filed in 2015).

Cir. 2002)). Additionally, the ALJ must consider all medical opinions in accordance with several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability and consistency, and the physician's specialization, if any. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Revels*, 874 F.3d at 655.

## III. DISCUSSION

At the first stage of the DAA analysis, the ALJ found that M.M.'s impairments meet the Commissioner's listing-level criteria for disability. AR 3351, 3355. Neither party challenges this conclusion. M.M. argues that (1) at the second stage of the DAA analysis, the ALJ erred in concluding that if M.M. stopped using drugs and alcohol, her remaining impairments would not be disabling and that DAA therefore is material to the disability determination, and (2) the ALJ did not properly evaluate the medical opinions of five sources. Dkt. No. 17 at 8-24. The Commissioner contends the ALJ reasonably found M.M. would not be disabled absent substance use and properly evaluated the medical opinions. Dkt. No. 23 at 3-19.

### A. DAA Materiality

As discussed above, the ALJ adopted the Appeals Council's finding that M.M. was "essentially sober for most of the period from 2017 going forward, with a possible brief relapse in 2021." AR 3351. The parties do not dispute this finding for purposes of the DAA analysis. *See generally* Dkt. Nos. 17, 23.

M.M. argues that the ALJ's materiality finding is not supported by substantial evidence in the record. Dkt. No. 17 at 8-17. First, M.M. argues that the ALJ mischaracterized her work activity during her period of sobriety and then relied on that activity as evidence that her symptoms improved without substance use. *Id.* at 9-10, 12. Second, M.M. contends that the ALJ overstated her improvements with medication and ignored evidence in the record that M.M. continued to suffer schizoaffective disorder, depression, psychosis, and PTSD symptoms while sober. *Id.* at 9-15. Third, M.M. argues that the ALJ erred in relying on M.M.'s ability to perform some activities of daily living to conclude that M.M. has only a mild limitation in her ability to adapt or manage herself without substance use. *Id.* at 11. Fourth, M.M. argues that the ALJ erred

in giving more weight to mental status examinations indicating normal functioning than to objective test results indicating significant deficits, and erred generally in relying on mental status examinations of limited evidentiary value. *Id.* at 12, 15-17.

The Commissioner argues that the ALJ reasonably determined that DAA is material to M.M.'s disability. Dkt. No. 23 at 3-9. First, the Commissioner asserts that the ALJ reasonably considered M.M.'s work activity during the period of sobriety in assessing her ability to work in the absence of substance use. *Id.* at 5-6. Second, the Commissioner argues that M.M.'s identification of continuing symptoms during her period of sobriety "merely present[s], at most, a differing interpretation of the evidence." *Id.* at 7. Third, the Commissioner argues that the ALJ properly considered M.M.'s activities of daily living to evaluate whether M.M. met a listing, not to determine her functional abilities. *Id.* at 8. Fourth, the Commissioner contends the ALJ properly relied on mental status examinations showing normal mental status. *Id.* at 9.

**1. Work Activity in 2019, 2020, 2024, 2025**

At the second stage of the DAA analysis, the ALJ found that M.M.'s work activity in 2019, 2020, 2024, and 2025 took place "during extended periods of sobriety" and "support[s] finding that, absent substance use, the claimant is capable of performing substantial gainful activity." AR 3360. Thereafter, the ALJ relied on M.M.'s work activity in 2019, 2020, 2024, and 2025 as evidence that M.M. has only mild or moderate limitations in each of the four functional areas of the paragraph B criteria. AR 3363-3364. Specifically, the ALJ found that M.M.'s "work activity in 2019 and 2020 (at substantial gainful activity levels); and her recent/current employment (also possibly at substantial gainful activity), demonstrate that she can follow instructions needed to complete tasks," "indicate[ ] that the claimant can manage social interactions well enough to maintain her current employment," "demonstrate that her concentration and persistence are sufficient to maintain employment," and "indicate that she is able to manager her activities of daily living." *Id.*

The parties dispute the nature of M.M.'s work activity in 2019, 2020, 2024, and 2025, and whether M.M.'s work activity demonstrates improvements in M.M.'s functional abilities during the period of sobriety such that M.M. would not be disabled if she stopped her substance use.

United States District Court
Northern District of California

**a. 2019 and 2020**

In 2019 and 2020, M.M. worked as an in-home caregiver for her partner with whom she lived at the time. *See* AR 1824, 1827; *see also* AR 2226, 2230-2231. M.M. testified at the February 14, 2023 hearing that "it wasn't a real job" because it required "just being there, because he had a plate in his head," and her partner could not move much. AR 1825-1826. At the November 5, 2024 hearing, M.M. confirmed that the work consisted of taking her partner to doctors' appointments and "just being there for him." AR 3406. She testified that she did not have to lift or carry anything nor assist her partner with toileting, transfers, or administration of medication. AR 3406, 3443. In its April 1, 2024 remand order, the Appeals Council noted that M.M. reported providing "in-home care for her partner in a sheltered environment," and noted M.M.'s hearing testimony that she eventually stopped performing this work "because she wasn't stable." AR 3469 (citing AR 1825).

The ALJ found that M.M.'s earnings in 2019 and 2020 from her work as an in-home caregiver rose to the level of substantial gainful activity. AR 3347. The ALJ further found that M.M.'s work in 2019 and 2020 did not constitute work in a sheltered environment. AR 3348. Citing a treatment note summarizing M.M.'s July 13, 2021 visit with Dr. Mains, the ALJ found that M.M.'s work as her partner's caregiver "ceased due to a quarrel" with her partner and her subsequent decision to move out of their shared home, and not because M.M. was unstable, as she had testified. *Id.* (citing AR 3153). Therefore, the ALJ concluded that M.M.'s work activity in 2019 and 2020 "support[s] finding that, absent substance use, the claimant is capable of performing substantial gainful activity." AR 3360.

M.M. argues that the ALJ mischaracterized both the nature of her work and why she stopped working, and thus, his evaluation of that work is not supported by substantial evidence. Dkt. No. 17 at 10; Dkt. No. 26 at 5. The Commissioner responds that the ALJ's interpretation of the evidence was rational and should be affirmed. Dkt. No. 23 at 6-7.

The Court agrees with M.M. The ALJ does not explain how M.M.'s reason for ceasing work as her partner's caregiver undermines M.M.'s contention that her work was "sheltered" and not representative of her ability to do full-time work. Moreover, at the February 14, 2023 hearing,

M.M. testified that she stopped her caregiving work because she and her partner were "no longer together" and she "wasn't getting along with him." AR 1825. But she explained further that she and her partner were not "getting along" because she "wasn't stable enough to take care of someone and keep doing that." *Id.* M.M. testified that her partner told her that she was talking to herself and that she "ke[pt] feeling like people are going to kill [her]." *Id.* There is no necessary inconsistency between M.M.'s statement to Dr. Mains that she stopped working for her partner after a fight and M.M.'s subsequent testimony that she stopped working because she was not stable. The ALJ did not acknowledge, let alone discuss, the full context of M.M.'s testimony about her prior work as her partner's caregiver.

Accordingly, the ALJ's conclusion that M.M.'s work in 2019 and 2020 demonstrates improvements in M.M.'s functional limitations during the period of sobriety such that she would not be disabled absent substance use is not supported by substantial evidence.

**b. 2024 and 2025**

The ALJ also cited M.M.'s work activity in 2024 and 2025 as evidence of M.M.'s improved functioning during the period of sobriety. AR 3360. At the November 5, 2024 hearing, M.M. testified that she was currently working part-time as an in-home caregiver on an as-needed basis. AR 3402. She stated that she worked one to four times a week, for four hours on average and for a maximum of six hours. AR 3403, 3410. M.M. testified that the work entailed sitting and watching her client and did not require lifting or carrying anything. AR 3403, 3405. M.M. further stated that her employer allowed her to miss work when she was unable to work due to her psychiatric symptoms. AR 3410-3413.

M.M. failed to provide documentation of her earnings in 2024 and 2025, resulting "in an insufficient evidentiary basis to determine if her earnings constitute substantial gainful activity." AR 3349. The ALJ resolved the issue in M.M.'s favor, concluding that M.M. did not engage in substantial gainful activity in 2024 and the first month of 2025. AR 3348-3349, 3350. Despite this conclusion, the ALJ nevertheless found that M.M.'s work activity in 2024 and 2025 supported a finding that, absent substance use, M.M. is capable of performing substantial gainful activity and has only mild to moderate mental limitations. AR 3360, 3363-3364.

In view of the ALJ's conclusion that M.M. did not engage in substantial gainful activity in 2024 and 2025, and given the very limited nature of her part-time work during this period, M.M. challenges the ALJ's reliance on that same work activity to conclude that M.M. has only mild to moderate limitations if she stopped substance use. Dkt. No. 17 at 10. The Commissioner argues that the ALJ reasonably considered M.M.'s work in 2024 and 2025 in assessing her limitations because M.M.'s "testimony that she worked a maximum of six hours per day and four days per week—amounting to 24 hours per week—would represent substantial gainful activity if she consistently worked that number of hours" and her testimony that she worked "'when they need [her]' suggests that she would be able to work more hours if her employer had more work to give her." Dkt. No. 23 at 5-6.

The Commissioner's arguments do not persuade. The ALJ concluded that there was an "insufficient evidentiary basis" to determine how frequently or regularly, and for how many hours per week, M.M. worked as a part-time caregiver in 2024 and 2025. *See* AR 3360. The ALJ did *not* conclude that, as the Commissioner suggests, M.M. "would be able to work more hours if her employer had more work to give her." *Compare id. with* Dkt. No. 23 at 5-6. The ALJ stated only that M.M.'s current employment "at least partially refutes her allegations that she is unable to maintain employment because she is unable to get to work regularly and on time, and unable to keep up with the work[.]" AR 3360; *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"). More importantly, after expressly concluding that M.M.'s work activity in 2024 and 2025 did *not* constitute substantial gainful activity, the ALJ then treated it as exactly that. In any event, the ALJ does not explain how M.M.'s non-substantial, part-time caregiver work supports his finding that she had only mild to moderate limitations during the period of sobriety.

Accordingly, substantial evidence does not support the ALJ's assessment of M.M.'s limitations based on her work activity in 2019, 2020, 2024, and 2025.

### 2. Improvements Due to Medication

The ALJ also found that M.M.'s substance use is material to her disability based on

records reflecting that M.M. reported improvements with medication during the period of sobriety. *See* AR 3364, 3366, 3367 (citing AR 1673, 1705, 1731, 2294, 2330, 2332, 2412, 2581, 3060, 3066, 3095, 3100, 3123, 3127, 3137, 3296, 3308).

M.M. argues that the ALJ's conclusion that her functional impairments improved with medication during the period of sobriety is not supported by substantial evidence. *See* Dkt. No. 17 at 9-15. M.M. argues that the ALJ cherry-picked parts of the record reflecting sporadic improvements with medication and ignored parts of the same record showing that M.M. continued to report significant functional impairments. *Id.* at 11, 13-15. The Commissioner does not directly respond to M.M.'s evidence but argues instead that M.M. "merely present[s], at most, a differing interpretation of the evidence, which does not show reversible error." Dkt. No. 23 at 7.

The Court agrees with M.M. that the ALJ selectively picked out a few instances of improvement as evidence that M.M.'s symptoms were largely controlled with medication such that she is not disabled absent substance use. For example, the ALJ cited Dr. Mains's August 8, 2018 letter stating that M.M.'s PTSD symptoms have improved with Prozac and Seroquel. AR 3364, 3366 (citing AR 2294). But the ALJ did not acknowledge that, in the same letter, Dr. Mains also noted that M.M. continued to have disorganized thoughts and that she "is unable to function independently." AR 2294. Nor did the ALJ acknowledge Dr. Mains's observation of "ongoing and severe mood swings with periods of depression and hypomania." *Id.* As another example, the ALJ cited a treatment note from M.M.'s visit with Dr. Mains on June 30, 2020, in which Dr. Mains noted that M.M. reported her "meds [were] working okay." AR 3364, 3366 (citing AR 3100). But the ALJ did not acknowledge that the same treatment note also shows that M.M. reported "ongoing anxiety and insomnia" and "anxious episodes." AR 3100.

Moreover, *every* medical provider who treated or examined M.M. for her mental conditions in the post-2017 period of sobriety assessed M.M. with marked limitations in at least two areas of work-related functioning, all while M.M. was taking various medications. *See* AR 1565, 1570 (Apr. 24, 2017: Dr. Franklin noting that M.M. reported "she has been taking psychotropic medication" and assessing M.M. with mostly marked to extreme limitations across ten categories of "mental abilities and aptitudes needed to do unskilled work"); AR 1573-1574,

United States District Court
Northern District of California

1577 (July 20, 2017: Dr. Mains assessing M.M. with overall marked limitations across all four domains of functioning while M.M. was taking Seroquel); AR 1730, 1733 (Sept. 11, 2018: Dr. Martin noting that M.M. was taking Seroquel and assessing M.M. with marked limitations in "performing detailed and complex tasks" and "complet[ing] a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition"); AR 2410, 2422 (Jan. 14, 2022: Dr. Wiebe noting M.M. was taking Zoloft, Seroquel, Risperdal, and trazodone, and finding mostly marked limitations across ten categories of "mental abilities and aptitudes needed to do unskilled work"); AR 2581, 2586-2587 (Jan. 8, 2023: Dr. Catlin noting that M.M. was taking Seroquel, Ambien, buprenorphine, and suboxone, and finding marked limitations in areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). Although M.M. reported some instances of improvement in her symptoms with medication, the record reflects that M.M.'s symptoms of PTSD, anxiety, depression, and schizoaffective disorder persisted throughout this period of sobriety, despite these medications. *See, e.g.*, *Norris v. Bisignano*, No. 24-cv-09196-BLF, 2025 WL 2373351, at *6 (N.D. Cal. Aug. 14, 2025) (rejecting Commissioner's argument that claimant's "symptoms were largely controlled with antipsychotic medication" where the ALJ "erred in picking out a few instances of improvement and treating them as basis for rejecting benefits").

Accordingly, the Court finds that substantial evidence does not support the ALJ's finding of sustained improvement with medication during the period of sobriety.

**3. Activities of Daily Living**

In assessing moderate limitations in M.M.'s abilities to interact with others and to adapt or manage oneself, the ALJ noted that M.M. "was able to go to church and shop" and "do light chores, prepare simple meals, make change, and take public transportation." AR 3363-3364. In addition, when evaluating M.M.'s RFC, the ALJ stated, "[W]hile the undersigned acknowledges that the claimant has some limitations in performing other activities of daily living, and while none of the claimant's activities of daily living are dispositive, taken together and considered in conjunction with the medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis." AR 3374-3375.

M.M. argues that the ALJ failed to explain how her activities indicate an ability to perform full-time work. Dkt. No. 17 at 11. The Commissioner responds that M.M. misconstrues the ALJ's analysis, arguing that the ALJ only evaluated M.M.'s daily activities to determine whether M.M. met a listing and not to determine M.M.'s functional abilities. Dkt. No. 23 at 8.

Contrary to the Commissioner's argument, the record shows that the ALJ considered M.M.'s activities of daily living to determine M.M.'s RFC and not just to determine whether M.M. met a listing. *See* AR 3374-3375. As M.M. notes, the Appeals Council's April 1, 2024 remand order stated that the ALJ erred in his DAA materiality analysis because he cited M.M.'s activities of daily living without explaining "how these basic activities, including light chores and simple meals, were inconsistent with the claimant's testimony or indicated an ability to perform full-time work." AR 3469 (citing AR 1763). The ALJ repeated the same error here by failing to explain how M.M.'s ability to go to church and shop and do light chores supports a finding that M.M. can perform work on a "sustained and continuous basis." *See Gina G. v. Bisignano*, No. 25-cv-02016-SK, 2026 WL 874104, at *7 (N.D. Cal. Mar. 30, 2026) ("Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Accordingly, the Court finds that the ALJ's findings regarding M.M.'s daily activities are not supported by substantial evidence.

**4. Mental Status Examinations**

The ALJ cited mental status examinations that purportedly show that "during periods of reported sobriety, the claimant's mental status examination findings were improved and at times completely unremarkable." AR 3360 (citing AR 1616-1619, 1625, 1627, 1629, 1632, 1638, 1648, 1655, 1656, 1658, 1660, 1667, 1670, 1731, 2316, 2318, 2330, 2332, 2337, 2339, 2581, 2931-2933, 2943, 3995-3996, 3997, 3999). The ALJ found that M.M.'s mental status examinations, "particularly those since 2017," have noted M.M. "to be cooperative, friendly, and pleasant, with good hygiene, good eye contact, normal psychomotor activity, speech, mood, and affect, intact memory and concentration, logical and linear thought process, appropriate demeanor, normal thought content, and normal insight and judgment, and she generally denied ideations." AR 3366. The ALJ also relied on the same mental status examinations to discount the opinions of Drs.

Mains, Franklin, Martin, Wiebe, and Catlin. *See* AR 3370-3373.

M.M. argues that the ALJ cherry-picked parts of the mental status examinations that support his conclusion that M.M.'s mental status was normal during her period of sobriety while ignoring parts of the same examinations that indicate abnormal mental status. Dkt. No. 17 at 15-16. M.M. also asserts that mental status examinations are of limited evidentiary value because they are a "quick snapshot of a moment in time." *Id.* at 16-17. The Commissioner responds that M.M.'s identification of mood disturbances in the cited mental status examinations fails to establish reversible error because "many medical conditions produce [symptoms] not severe enough to preclude gainful employment." Dkt. No. 23 at 9 (citation omitted).

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months and years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *T.N. v. Kijakazi*, No. 20-cv-07518-VKD, 2022 WL 2222967, at *7-8 (N.D. Cal. June 21, 2022) (holding that an ALJ failed to provide specific and legitimate reasons where the ALJ's determination that a medical opinion was inconsistent with normal mental status examinations was "based on a selective view of the evidence and a mischaracterization of the record"). A "'normal' designation of Plaintiff's 'mental status' is not only ambiguous [ ] but is also not dispositive of Plaintiff's mental health as a whole . . . Plaintiff having a composed and 'normal' demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts." *Moody v. Berryhill*, No. 16-cv-3646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) (internal quotations omitted).

The Court agrees with M.M. that the ALJ selectively highlighted some indicators that M.M. had normal memory, mood, affect, speech, thought process, and thought content from mental status examinations while ignoring other negative indicators, and that even these highlighted indicators are not inconsistent with M.M.'s mental health diagnoses. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry pick" from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety). The mental status examinations that the ALJ relies on also described M.M. as anxious, depressed, sad, and as having poor attention and judgment. *See* AR 1618, 1625, 1627, 1629, 1632, 1648, 1656,

1731, 2316, 2330, 2332, 2337, 2581. Presenting with "normal mood, affect, speech, thought process, and thought content" on some days is not inconsistent with findings of depression, PTSD, anxiety, and mania, particularly where, as here, every medical provider who treated or examined M.M. for mental conditions diagnosed her with schizoaffective disorder, PTSD, bipolar disorder, and/or major depressive disorder. *See* AR 1568, 1700, 1732, 2418, 2583. In addition, the ALJ erred by relying on mental status examinations indicating "intact memory and concentration" while failing to consider M.M.'s objective test results from the same post-2017 sobriety period that consistently showed M.M. had severe impairments in memory and concentration. *See* AR 1567, 1731-1732, 2413-2414, 2582. It was error for the ALJ to selectively cite records showing positive or normal mental status without also considering records showing abnormal results during the same time period. *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]reatment records must be viewed in light of the overall diagnostic record."), *superseded by statute on other grounds*; *Smith v. Kijakazi*, 14 F.4th 1108, 1115 (9th Cir. 2021) (holding that it is error for an ALJ to pick out a few isolated instances of improvement because "in many mental health conditions, [c]ycles of improvement and debilitating symptoms are a common occurrence" (internal quotations and citation omitted)); *Norris*, 2025 WL 2373351, at *6-7 ("[E]ven if Plaintiff were normal on the days he was examined or treated by mental health professionals, this notation alone was insufficient reason to find his impairments improved absent substance use.").

Accordingly, the ALJ's conclusion that the severity of M.M.'s mental symptoms "was greatly lessened during periods of sobriety" based on "normal" mental status examinations is not supported by substantial evidence. *See* AR 3359.

***

For the above reasons, the Court finds that the ALJ erred in finding M.M.'s substance use material to her disability based on purported improvements in her functional abilities during the period of sobriety from 2017 forward, as compared to periods of substance use before 2017.

**B. Medical Opinions**

M.M. contends that the ALJ did not properly evaluate the medical opinions of: (1) treating physician Dr. William Mains, M.D.; (2) psychological examiner Dr. Lesleigh Franklin, Ph.D.; (3)

psychological examiner Dr. Paul Martin, Ph.D.; (4) psychological examiner Dr. Katherine Wiebe, Ph.D.; and (5) psychological examiner Dr. Laura Catlin, Psy.D. Dkt. No. 17 at 17-24. The Commissioner maintains that the ALJ properly evaluated these medical opinions. Dkt. No. 23 at 9-19.

All medical opinions at issue here were developed and issued during M.M.'s period of sobriety starting in 2017.

**1. Treating Physician Dr. Mains**

Treating physician Dr. Mains was M.M.'s primary care physician from April 27, 2017 to December 20, 2022. *See* AR 1726, 2427. M.M. saw Dr. Mains on a monthly basis for the treatment of "schizoaffective disorder, bipolar type." AR 1722, 2423.

The ALJ gave Dr. Mains's opinions "partial weight." AR 3371-3372. The parties agree that the ALJ was required to give specific and legitimate reasons for discounting Dr. Mains's opinions. *See* Dkt. No. 17 at 21; Dkt. No. 23 at 11. Satisfying the "specific and legitimate reasons" requirement means that an "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Moreover, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Id.* Rather, an ALJ "*must set forth his own interpretations and explain why* they, rather than the doctors', are correct." *Id.* at 421-22 (emphasis added); *see also Revels*, 874 F.3d at 654 ("'The ALJ can meet this burden [to provide specific and legitimate reasons] by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, *stating his interpretation thereof, and making findings*.'") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)) (emphasis added). In cases where the medical opinions are markedly different from the ALJ's findings, "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a

substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13.

Dr. Mains's provided several opinions during the five years he treated M.M. The Court addresses the parties' arguments as to each.

**a. July 20, 2017 Opinion**

On July 20, 2017, after treating M.M. for three months, Dr. Mains opined that M.M. overall had marked limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 1573-1574. He opined that M.M. would be absent from work four or more days per month and would be off-task more than 30% of the time, citing M.M.'s symptoms of "cognitive disorganization" and "mood instability, particularly around people." AR 1575.

The ALJ found that while Dr. Mains's July 20, 2017 opinion that M.M. had marked limitations in all four domains of mental function was "mostly supported during the periods of active substance use[,] [but] the medical evidence of record during the claimant's period of sobriety (starting in 2017), is not supportive of or consistent with such significant limitations." AR 3372. The ALJ found that Dr. Mains's opinion overstated M.M.'s limitations because mental status examinations "often noted normal mood, affect, speech, thought process, and thought content with no ideations, particularly during later portions of the relevant period when the claimant reported sobriety, with improvement with medication noted." *Id.*

M.M. contends the ALJ erred in relying on mental status examinations to discount Dr. Mains's opinion because the ALJ "failed to address the many abnormal mental status [examinations] in the record as a whole." Dkt. No. 17 at 20. The Commissioner responds that the ALJ properly relied on normal mental status examinations during M.M.'s period of sobriety. Dkt. No. 23 at 12-13. As discussed above, the ALJ erred in relying heavily on portions of M.M.'s mental status examinations without considering the medical record as a whole. *See supra* section III.A.4.

M.M. further argues that the ALJ failed to correctly evaluate Dr. Mains's opinion as required by 20 C.F.R. §§ 404.1527(c) and 416.927(c). Dkt. No. 17 at 20-21. The Commissioner argues that the ALJ properly discussed the relevant factors because the ALJ explained that he

discounted Dr. Mains's opinion based on the lack of supportability and consistency and the ALJ is not required to articulate his analysis of each of the factors. Dkt. No. 23 at 13-14.

While the Commissioner is correct that the ALJ is not required to specifically reference each factor listed in 20 C.F.R. §§ 404.1527 and 416.927, *see Harris v. Colvin*, 584 F. App'x 526, 528 n.1 (9th Cir. 2014), the ALJ's evaluation of the supportability and consistency of Dr. Mains's opinion is not supported by substantial evidence. The ALJ concluded that while Dr. Mains's "conclusions are mostly supported during the periods of active substance use[,] the medical evidence of record during the claimant's period of sobriety (starting in 2017), is not supportive of or consistent with such significant limitations." AR 3372. However, given that Dr. Mains only treated M.M. *during the period of sobriety*, the ALJ fails to explain why he credited this opinion for M.M.'s *period of substance use* and not for the period of sobriety. *See Jalissa P. v. Bisignano*, No. 24-cv-06465-SI, 2025 WL 2682578, at *10 (N.D. Cal. Sept. 19, 2025) (holding ALJ erred in crediting medical providers' opinions only during periods of substance use where the medical providers only treated and examined plaintiff during plaintiff's period of sobriety).

Consideration of the relevant factors indicates that Dr. Mains's July 20, 2017 opinion is entitled to controlling weight. First, Dr. Mains was M.M.'s regular treating physician. Second, while at the time of this opinion, Dr. Mains had only treated M.M. for three months, his opinion is supported by his own treatment records and notes. For example, Dr. Mains observed that M.M. exhibited "serious cognitive disorganization, and mood instability, particularly anxiety around people, mak[ing] her unable to complete tasks." AR 1575. Third, Dr. Mains's opinion that M.M. had marked limitations across all four domains of mental function and that she would be absent four or more days from work and off-task more than 30% of the time is consistent with those from the examining physicians, Drs. Franklin, Martin, Wiebe, and Catlin. *See* AR 1570 (Dr. Franklin finding mostly marked to extreme limitations in M.M.'s mental abilities and aptitudes to do unskilled work); AR 1733 (Dr. Martin finding marked limitation in M.M.'s ability to complete a normal workday or workweek without interruptions resulting from M.M.'s psychiatric condition); AR 2418 (Dr. Wiebe noting that "[d]ue to the complexity and severity of her cognitive, and psychiatric disorder symptoms, [M.M.] would likely have difficulties being able to maintain a

United States District Court
Northern District of California

regular job even if she were not to use any [ ] substances in the future."); AR 2587 (Dr. Catlin concluding that M.M. would be absent four or more days per month and off-task more than 30% of the work day). Finally, Dr. Mains is a psychiatrist, thus demonstrating relevant specialization. *See* AR 1700.

Accordingly, the ALJ erred in discounting Dr. Mains's July 20, 2017 opinion for reasons that are not specific or legitimate and supported by substantial evidence.

**b. August 2018 Opinions**

On August 8, 2018, after treating M.M. for more than a year, Dr. Mains signed a letter stating that M.M. "is unable to function independently, and has been reliant on family for support, all throughout her life." AR 1700. Dr. Mains noted M.M. has "very loose associations around relating her history" and "ongoing paranoid thought content," which "manifest[ ] as inability to organize[ ] tasks and plans around employment, finding housing, managing her own medical care and treatment, and effectively interacting with the public." *Id.* He further stated that M.M.'s PTSD "is exhibited by social avoidance and isolation, severe anxiety, nightmares affecting sleep, re-experiencing symptoms, and withdrawing from all relationships." *Id.* Dr. Mains stated that he has "seen ongoing and severe mood swings with periods of depression and hypomania." *Id.* Dr. Mains opined that M.M. "is fully and permanently disabled, [and] that this disability has gone back to childhood and I expect will be lifelong." *Id.*

On August 31, 2018, Dr. Mains completed a "Mental Disorder Questionnaire Form." AR 1722-1726. He observed that M.M. did not attend appointments without support, experienced cognitive disorganization, and complained of anxiety and mood swings. AR 1722. Dr. Mains found further noted that M.M.'s "intellectual functioning when organizing and completing tasks is not good." AR 1723. He found that "even for mild to moderately difficult tasks, [M.M.] requires a lot of direction and oversight," and M.M. "functions okay only in highly supportive, structured environments." AR 1723, 1725. Dr. Mains stated that M.M.'s concentration and task completion abilities were "very poor" and that M.M. had no capacity to adapt to stress. AR 1725. He opined that M.M.'s "PTSD and cognitive symptoms have lasted years, and are very unlikely to improve much in the foreseeable future." AR 1726.

The ALJ found that Dr. Mains's statement that M.M. "is fully and permanently disabled," improperly determined an issue reserved to the ALJ. AR 3372. The ALJ gave that statement no weight. Apart from that statement, the ALJ did not assign any weight to the other opinions in Dr. Mains's August 8, 2018 letter and in his August 31, 2018 questionnaire response. *See id.* The ALJ simply stated: "Aside from his statement regarding the claimant's disability status, Dr. Mains failed to delineate or quantify limitations across the four domains of mental function found under Paragraph B." *Id.*

While M.M. does not challenge the ALJ's rejection of Dr. Mains's statement finding her disabled, M.M. argues that the ALJ did not properly evaluate or consider Dr. Mains's other August 2018 opinions because he failed to specify any weight for the opinions and instead "wholly disregarded" them based on the single statement that M.M. is disabled. Dkt. No. 17 at 18. The Court agrees with M.M. that the ALJ erred in his evaluation of Dr. Mains's August 2018 opinions.

First, the ALJ erred by failing to specify the persuasive weight he gave Dr. Mains's August 2018 opinions, other than the single statement concluding M.M. is disabled. In failing to assign a particular weight to these opinions, the ALJ also failed to explain which portions of the opinions (if any)—and the limitations contained therein—he found persuasive and adopted, and which he rejected, and why. The ALJ's failure to comply with the applicable regulations in assessing Dr. Mains's August 2018 opinions leaves the Court "with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (finding the ALJ's failure to provide reasons for rejecting evidence did not constitute a harmless error); *see also Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008) (reversing when the ALJ failed to indicate weight given to medical opinions or incorporate their findings into RFC); *J.A. v. Kijakazi*, No. 20-cv-07142-VKD, 2022 WL 2181693, at *5-7 (N.D. Cal. June 16, 2022) (holding that the ALJ erred by failing to specify the weight of medical opinions). The Commissioner did not respond to M.M.'s argument on this point. *See* Dkt. No. 23.

Second, while the ALJ did not assign a specific weight to Dr. Mains's August 2018

opinions, he appears to have completely disregarded those opinions on the basis that they did not contain a function-by-function assessment. *See* AR 3372. Older Ninth Circuit authority suggests that an ALJ may discredit an opinion for failing to provide a function-by-function assessment. *See Morgan*, 169 F.3d at 601 (finding substantial evidence supported ALJ's discounting of opinion where examining psychologist "identified characteristics that might limit [claimant's] ability to work on a sustained basis" but "did not explain *how* these characteristics precluded work activity in [claimant's] case"). However, "many district courts in the Ninth Circuit have recently rejected the lack of function-by-function analysis as a valid basis to discount a medical opinion, particularly that of a treating physician." *Averill-Marcogliese v. Kijakazi*, No. 1:21-cv-00277-SKO, 2023 WL 4108429, at *7 (E.D. Cal. June 21, 2023) (collecting cases). The Commissioner has also sometimes declined to defend this position on appeal. *See, e.g.*, *Elizabeth F. v. Comm'r Soc. Sec. Admin.*, No. 3:19-cv-00202-YY, 2020 WL 5870205, at *6, (D. Or. Aug. 10, 2020) ("The Commissioner does not defend the validity of the ALJ's function-by-function rationale."), *report and recommendation adopted*, No. 3:19-cv-202-YY, 2020 WL 5848351 (D. Or. Oct. 1, 2020); *Mary M. v. Comm'r of Soc. Sec.*, No. 19-cv-327-JR, 2020 WL 2556353, at *3 n.3 (D. Or. May 20, 2020) ("The Commissioner concedes that the lack of a function-by function assessment is not a valid reason to discount the opinion.").

Here, the Commissioner contends Dr. Mains "did not provide significant explanation" of how M.M.'s symptoms "would translate to specific work abilities." Dkt. No. 23 at 13. While an ALJ is not obliged to accept opinions that are conclusory or inadequately supported by clinical findings, *Bray*, 554 F.3d at 1228, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations," *Orn*, 495 F.3d at 634. The ALJ did not sufficiently explain what evidence, in his view, did not support Dr. Mains's opinions. Contrary to the Commissioner's contention, Dr. Mains did include at least some explanation for how M.M.'s symptoms would translate to work abilities. In his August 8, 2018 letter, Dr. Mains explained that M.M.'s symptoms, including thought disorganization, inability to function independently, and ongoing paranoid thought content, "manifest[ ] as inability to organize[ ] tasks and plans around

employment." AR 1700. And in his August 31, 2018 questionnaire response, Dr. Mains explained that M.M. "has no capacity for adaptation to stress" because "she withdraws from and avoid[s] all stresses." AR 1725. Dr. Mains also explained that M.M. struggled to attend appointments without support from her case manager due to thought disorganization, and that M.M. experiences anxiety and mood swings. AR 1722, 1723. He concluded that M.M.'s "intellectual functioning when organizing and completing tasks is not good" and that "she requires a lot of direction and oversight." AR 1723. Dr. Mains's findings and explanations provide at least some support for his recommendations regarding M.M.'s work limitations, contrary to the ALJ's decision.

Because it is unclear whether and how the ALJ considered the factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c), or whether the ALJ disregarded Dr. Mains's opinions in their entirety based on the single statement of disability, the Court finds that the ALJ did not provide the requisite specific and legitimate reasons for discounting Dr. Mains's August 2018 opinions.

**c. December 20, 2022 Opinion**

On December 20, 2022, after treating M.M. for more than five years, Dr. Mains provided an updated opinion by completing a "Mental Impairment Questionnaire." AR 2423-2427. Dr. Mains opined that M.M. had mild to marked limitations in mental abilities and aptitudes needed to do unskilled work. AR 2425-2426. He found that M.M. had none to mild limitations in activities of daily living, but marked limitations in maintaining social functioning and in concentrating, persisting, or pacing herself. AR 2426. In addition, Dr. Mains opined that M.M. would have four or more episodes of decompensation during a 12-month period. *Id.* Dr. Mains noted that M.M. experienced "ongoing paranoid delusions and disorganized thought content," as well as "visible mood swings between manic and depressed." AR 2423.

The ALJ gave Dr. Mains's December 20, 2022 opinion "partial weight," discounting the opinion as inconsistent with M.M.'s normal mental status examinations and her "work activity in 2019, 2020, and currently." AR 3372. M.M. contends the ALJ's grounds for discounting Dr. Mains's December 20, 2022 opinion are not supported by substantial evidence because the ALJ selectively cited outdated mental status examinations and unspecified "work activity five years

prior to the decision." *See* Dkt. No. 17 at 19-20. The Commissioner argues that the ALJ properly relied on normal mental status examinations and argues generally that Dr. Mains's opinions are inconsistent with M.M.'s work activity during the relevant period. Dkt. No. 23 at 10, 13.

The Court agrees with M.M. In evaluating Dr. Mains's December 2022 opinion, the ALJ cited mental status examinations dating back to 2017—the same mental status examinations he cited in assessing Dr. Mains's July 20, 2017 opinion. *See* AR 3372. The ALJ's reliance on these mental status examinations to critique the December 2022 opinion is not supported by substantial evidence, for the reasons discussed above. *See supra* section III.A.4. The ALJ's other ground for discounting the December 2022 opinion relies on a purported inconsistency between the opinion and M.M.'s work activity. The ALJ does not identify any specific activities as inconsistent with Dr. Mains's opinions about M.M.'s limitations in the four functional areas, and, as discussed above, the ALJ's conclusions regarding the nature of M.M.'s work activity in 2019, 2020, 2024, and 2025 are not supported by substantial evidence. *See supra* section III.A.1.

Accordingly, the Court finds that the ALJ did not provide specific and legitimate reasons for discounting Dr. Mains's December 20, 2022 opinion.

**2. Psychological Examiner Dr. Franklin**

M.M. argues the ALJ also improperly assigned "little weight" to the opinion of psychological examiner Dr. Franklin. Dkt. No. 17 at 21-22. The Commissioner argues that the ALJ reasonably discounted Dr. Franklin's opinion "because it lacked internal support and consistency with the remainder of the record." Dkt. No. 23 at 14. The Court agrees with M.M.

Dr. Franklin examined M.M. in person on March 29, 2017, towards the beginning of the period of sobriety. AR 1564. As part of her evaluation, Dr. Franklin interviewed M.M., made mental status findings, and administered objective tests to assess M.M.'s cognitive and emotional functioning. AR 1564-1569. In the mental status examination, Dr. Franklin noted that M.M. "was not oriented to person, place and time," her "[a]ttention was impaired on formal measures," "[s]he worked at a rate that was slow as compared with peers," and M.M. "was not able to sustain attention well enough to remember short strings of information." AR 1565-1566. Dr. Franklin noted that M.M.'s delayed and immediate memory problems were severe and that her speech was

United States District Court
Northern District of California

somewhat slurred. AR 1566. Dr. Franklin noted that M.M. had a pleasant disposition but exhibited an anxious mood. *Id.* Dr. Franklin further noted that M.M. reported experiencing hallucinations and suicidal ideation. *Id.* Dr. Franklin reported that M.M.'s "fund of knowledge, intelligence and abstraction appeared to be low, but perceptual distortions and poor orientation may have contributed to this presentation." *Id.*

Dr. Franklin assessed M.M. using the Repeated Battery for the Assessment of Neuropsychological Status (RBANS), the Mini Mental Status Exam (MMSE), and the Trails A and B Tests. *Id.* M.M. received an overall score of 42 on the RBANS, placing her below the 0.1 percentile and in the Extremely Low range. AR 1567. Dr. Franklin noted that "[t]here were notable problems with language, visuospatial abilities, immediate memory, delayed memory, attention and concentration, and executive functioning." *Id.* M.M.'s overall MMSE score was "16/30, suggesting moderate impairment." *Id.* Dr. Franklin noted that M.M.'s performance on the Trails A and B Tests was "classified as impaired." *Id.*

Dr. Franklin diagnosed M.M. with bipolar disorder, PTSD, unspecified major neurocognitive disorder, relational problems, occupational problem, and low income. AR 1568. Dr. Franklin opined that M.M. "has functional impairment[s] in language, visuospatial abilities, immediate memory, delayed memory, attention and concentration, and executive functioning." AR 1569. She observed that M.M. has difficulty naming and retrieving learned material; perceiving special relationships and constructing accurate representations of objects; remembering information shortly after it is presented; forming new memories; and remembering and manipulating visual and oral information from her short-term memory. *Id.*

The ALJ gave "little weight" to Dr. Franklin's opinion on the grounds that the opinion was "partially based upon the claimant's reporting during the one-time evaluation," and that the medical evidence of record since 2017, including mental status examinations, supports less significant mental limitations. AR 3371. Neither M.M. nor the Commissioner clearly state whether, in doing so, the ALJ was required to provide "clear and convincing" reasons or "specific and legitimate" ones. In any event, the ALJ's reasons for discounting Dr. Franklin's opinion do not satisfy either standard.

First, the ALJ relied on the same mental status examinations that he cited in his evaluation of Dr. Mains's opinions. AR 3371. The ALJ's evaluation of Dr. Franklin's opinion based on the same mental status examinations is not supported by substantial evidence, for the reasons discussed above. *See supra* section III.A.4.

Second, the fact that Dr. Franklin conducted a one-time evaluation is not, in itself, a legitimate basis to discount an opinion. That "rationale would render all examining opinions superfluous, and is contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors." *See, e.g., Brown v. Berryhill*, No. 17-cv-02834-JCS, 2018 WL 4700348, at *17 (N.D. Cal. Sept. 29, 2018) (internal quotations and citation omitted); *Sanchez v. Saul*, No. 18-cv-05184-VKD, 2020 WL 1505708, at *9 (N.D. Cal. Mar. 30, 2020) (holding that the fact that the medical provider only examined claimant once was "not a legitimate reason to reject [medical provider's] opinion").

The ALJ also discounted Dr. Franklin's opinion because Dr. Franklin relied on M.M.'s self-report regarding her symptoms. The ALJ failed to explain which parts of Dr. Franklin's opinion he discounted because of her reliance on M.M.'s self-report, and what made M.M.'s self-report unreliable. In her evaluation of M.M., Dr. Franklin interviewed M.M. and administered multiple objective tests, including the RBANS, MMSE, and the Trails A and B Test. AR 1564-1569. The Ninth Circuit has recognized that where a mental health provider relies in part on the claimant's self-reported symptoms but also relies on other objective evidence, it is error for the ALJ to reject the provider's opinion based on the premise that the claimant's self-reporting is unreliable. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that psychiatric "[d]iagnoses will always depend in part on the patient's self-report" because "such is the nature of psychiatry"); *see also Labryssa v. Kijakazi*, No. 21-cv-04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) ("Clinical interviews and mental status evaluations are objective measures and cannot be discounted as a self-report." (internal quotations and citation omitted)). Given the objective measures employed by Dr. Franklin, the fact that Dr. Franklin relied in part on M.M.'s self-report does not provide a "specific and legitimate" or a "clear and convincing" reason for discounting this opinion.

In sum, the ALJ did not provide sufficient reasons, supported by substantial evidence, for assigning Dr. Franklin's opinion only "little weight."

**3. Psychological Examiner Dr. Martin**

M.M. argues that the ALJ erred in giving psychological examiner Dr. Martin's opinion only "partial weight." Dkt. No. 17 at 22-23. The Commissioner responds that substantial evidence supports the ALJ's evaluation of Dr. Martin's opinion as somewhat unsupported and somewhat inconsistent with the medical record. Dkt. No. 23 at 16-17. The Court agrees with M.M.

Dr. Martin evaluated M.M. in person on September 11, 2018, during the period of sobriety. AR 1729. Dr. Martin noted that M.M. was casually dressed and that her grooming was marginal. AR 1731. Dr. Martin further noted that M.M. presented in a cooperative manner. *Id.* In the mental status examination, Dr. Martin reported that M.M. was oriented as to person, place, time, and situation, and that she was "100% intelligible." *Id.* He further noted that M.M.'s mood was depressed, but that she denied suicidal or homicidal ideations. *Id.* Dr. Martin assessed M.M. to have fair attention, fund of knowledge, memory, and insight/judgment. *Id.* He noted that her thought process was "[l]inear, organized, goal directed, and without evidence of psychosis." *Id.* He further noted that M.M. denied having hallucinations or delusions. *Id.*

Dr. Martin assessed M.M. using the WAIS-IV which measures "a person's intellectual ability and cognitive strengths and weaknesses." *Id.* M.M.'s overall WAIS-IV results were in the "Extremely Low to Borderline range[,] indicating significant cognitive impairment consistent with prior test results." AR 1732. On the WMS-IV test, which "provides a detailed assessment of clinically relevant aspects of memory functioning for auditory and visual memory abilities," M.M.'s scores were in the "Extremely Low to Borderline range[,] indicating severe impairment with learning and memory." *Id.* On the Trail Making Test which measures "general brain function and assesses the presence of possible brain damage," M.M. "showed Significant Difficulty with sustained attention and mental tracking." *Id.* Dr. Martin noted that M.M.'s Trail Making Test scores indicated a likelihood of neurocognitive impairment. *Id.*

Dr. Martin diagnosed M.M. with bipolar disorder, PTSD, and mild neurocognitive disorder

United States District Court
Northern District of California

due to multiple etiologies. *Id.* Dr. Martin opined that "[n]o significant changes [to M.M.'s symptoms] are likely to occur within the next 12 months." *Id.* Dr. Martin opined that M.M. was mildly limited in performing simple and repetitive tasks and accepting instructions from supervisors. AR 1733. He further opined that M.M. was moderately limited in maintaining regular attendance in the workplace, performing work activities on a consistent basis, performing work activities without special or additional supervision, interacting with coworkers and with the public, and dealing with the usual stresses encountered in a competitive work environment. *Id.* Dr. Martin opined that M.M. has marked limitations in performing detailed and complex tasks and completing a normal workday or workweek without interruptions resulting from her psychiatric condition. *Id.*

The ALJ assigned "partial weight" to Dr. Martin's opinion. AR 3371. The ALJ found that Dr. Martin's mental status examination notes did not support any marked limitations, and only somewhat supported mild to moderate limitations. *Id.* The ALJ determined that the medical evidence of record since 2017 "is more consistent with the ability to perform simple, routine tasks with simple work-related decisions, occasional workplace changes, and limited social interaction when abstaining from substance use." *Id.*

The ALJ's explanation fails to meet either the "clear and convincing" or "specific and legitimate" standard. The ALJ once again relied on the same mental status examinations purportedly showing normal mental status. As with Drs. Mains and Franklin, the Court finds that the ALJ erred in discounting Dr. Martin's opinion based on earlier mental status examinations.

The ALJ discounted Dr. Martin's opinion because M.M.'s mental status examination results at the September 11, 2018 visit indicated that M.M. had "no hallucinations, delusions, or ideations" and M.M. "was noted to have normal thought content and linear and goal directed thought process." AR 3371 (citing AR 1731). The ALJ did not explain how the limitations assessed by Dr. Martin regarding M.M.'s work-related abilities are contradicted by the "snapshot" mental status examination to which the ALJ refers. Dr. Martin's mental status examination reported on M.M.'s presentment on the examination date. The ALJ does not explain how such a mental status examination contradicts objective test results showing that M.M. exhibited

"significant cognitive impairment," "severe impairment with learning and memory," and "significant difficulty with sustained attention and mental tracking." *See Watson v. Saul*, No. 19-cv-05627-WHO, 2020 WL 5366722, at *12 (N.D. Cal. Sept. 8, 2020) (holding that the ALJ erred in rejecting Dr. Martin's opinions assessing marked and moderate limitations based on Dr. Martin's mental status examination). Indeed, the ALJ did not specifically address, and appeared to overlook, the results of the objective tests of M.M.'s cognitive abilities, M.M.'s report to Dr. Martin that she has "problems with memory and concentration," and Dr. Martin's review of other providers' examination reports. *See* AR 1729.

In sum, the ALJ's reasons for giving Dr. Martin's opinion only "partial weight" are not "specific and legitimate" or "clear and convincing," and are not supported by substantial evidence. *See P.E. v. Saul*, 445 F. Supp. 3d 306, 330-31 (N.D. Cal. 2020) (finding that the ALJ erred in rejecting medical opinion where the ALJ "looked only to the results of [medical provider's] mental status exam and did not address the other grounds for her opinion").

**4. Psychological Examiner Dr. Wiebe**

M.M. contends the ALJ erred in his evaluation of psychological examiner Dr. Wiebe's opinion as entitled to "little weight." Dkt. No. 17 at 23-24. The Commissioner argues that the ALJ's assessment of Dr. Wiebe's opinion was reasonable because "Dr. Wiebe's one-time interaction was not consistent with the medical evidence." Dkt. No. 23 at 17-18. The Court agrees with M.M.

Dr. Wiebe examined M.M. by telephone on January 11, 2022, during the period of sobriety. AR 2407-2422. As part of her evaluation. Dr. Wiebe interviewed M.M. regarding her background, made mental status findings, and administered objective tests to assess M.M.'s cognitive and emotional functioning. *See id.* In the mental status examination, Dr. Wiebe noted that M.M. was "somewhat guarded" but "cooperative and responsive" during the assessment. AR 2412. She further noted that M.M. was alert and sounded agitated and that her mood was depressed, with anxiety. *Id.* Dr. Wiebe observed that M.M. exhibited distractibility and required frequent redirection. *Id.* She also noted that M.M. was "easily cognitively overwhelmed" and had trouble following directions. *Id.* She further noted that M.M.'s effort on tasks was "overall fair."

*Id.* Dr. Wiebe noted that M.M. was oriented as to person, place, and time. *Id.* Dr. Wiebe reported that while M.M. denied suicidal or homicidal thoughts, M.M. reported recently experiencing auditory and visual hallucinations. *Id.*

Dr. Wiebe assessed M.M. using the Montreal Cognitive Assessment (MoCA). AR 2413. As to M.M.'s overall intellectual functioning, M.M. received a score of 7 out of 30 on the MoCA which was within the "severely impaired range." AR 2413. Dr. Wiebe noted that M.M. showed severe impairment in attention and concentration, moderate to severe impairments in executive functioning, severe impairment in memory, moderate to severe impairments in language, and moderate impairment in her sensory and motor abilities. AR 2412-2413. Dr. Wiebe also noted that M.M.'s Beck Depression Inventory – II score indicates that she has severe depression and her Beck Anxiety Inventory results indicate severe anxiety. AR 2414.

Dr. Wiebe diagnosed M.M. with schizoaffective disorder, PTSD, unspecified neurocognitive disorder, opiate use disorder ("on suboxone therapy"), and alcohol use disorder ("in remission"), and identified homelessness, lack of social support, occupational problems, and financial problems as additional issues. AR 2418. Dr. Wiebe opined that M.M. has severe impairments in memory and attention/concentration. AR 2417. She opined that M.M. has moderate to severe impairment in executive functioning and language abilities. *Id.* She also opined that M.M. has moderate impairments in sensorimotor abilities. *Id.*

Dr. Wiebe opined that M.M.'s cognitive functioning deficits and psychiatric disorder symptoms "would affect her ability to attend to, remember, and follow through with directions and tasks especially with the demands of an employment situation." AR 2418. Dr. Wiebe opined that M.M. has problems with cognitive and perceptual distortions, with affect, and with interpersonal interactions. *Id.* Dr. Wiebe stated that M.M. would have difficulty communicating and relating effectively with others, including co-workers, the public, and supervisors in a workplace, on a consistent basis. *Id.* Dr. Wiebe opined that "[d]ue to the complexity and severity of her cognitive, and psychiatric disorder symptoms, [M.M.] would likely have difficulties being able to maintain a regular job even if she were not to use any [ ] substances in the future." *Id.*

The ALJ gave "little weight" to Dr. Wiebe's opinion on the grounds that the opinion was

based on a one-time evaluation and that the medical evidence of record since 2017, including the same mental status examinations he cited in discounting the other medical opinions, supported lesser limitations across the four functional areas in the absence of substance use. AR 3373.

For the reasons discussed above, *see supra* sections III.A.4 & B.2, these are not adequate reasons to discount Dr. Wiebe's opinion. The ALJ's reasons for giving Dr. Wiebe's opinion "little weight" are not "specific and legitimate" or "clear and convincing," and are not supported by substantial evidence.

**5. Psychological Examiner Dr. Catlin**

M.M. argues that the ALJ erred in his evaluation of psychological examiner Dr. Catlin's opinion as entitled to only "partial weight." Dkt. No. 17 at 24. The Commissioner argues that the ALJ reasonably found that Dr. Catlin's opinion was unsupported by her findings and inconsistent with the medical evidence of record. Dkt. No. 23 at 18-19. The Court agrees with M.M.

Dr. Catlin examined M.M. by telephone on December 30, 2022, during the period of sobriety. AR 2578-2589. In her mental status examination, Dr. Catlin noted that M.M.'s response time to questions was within the normal range and that M.M. appeared engaged in the evaluation and able to sustain her attention. AR 2581. Dr. Catlin noted that M.M.'s mood was depressed but that M.M. reported no suicidal ideation. *Id.* However, Dr. Catlin noted that M.M. reported auditory delusions and paranoid delusions. *Id.* Dr. Catlin further noted that M.M.'s thought process was goal directed and logical and that her thought content was within normal limits. *Id.* Dr. Catlin observed that M.M.'s speech was clear, coherent, and spontaneous. *Id.* But she also noted that M.M.'s insight and judgment were limited. *Id.*

M.M. scored 7 out of 22 on the MoCA. AR 2582. Dr. Catlin noted that any score below 19 indicates cognitive impairment. *Id.* Specifically, Dr. Catlin observed that M.M. showed impairment in memory, executive functioning, attention, language and speech, abstract reasoning, perception, and delayed recall. AR 2584-2585. M.M. scored a 32 on the Beck Depression Inventory which Dr. Catlin noted indicated severe depression. AR 2583. Dr. Catlin diagnosed M.M. with major depressive disorder, alcohol use disorder ("in full remission"), mild cognitive impairment, chronic ankle pain, insufficient social insurance or welfare support, other problems

United States District Court
Northern District of California

related to employment, and problems related to the social environment. *Id.*

Based on her examination, Dr. Catlin opined that M.M. has overall moderate limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 2586-2587. Dr. Catlin assessed marked limitations in subcategories of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* Dr. Catlin further opined that she expected M.M. would be absent from work four or more days per month due to her impairments and that M.M. would be off-task more than 30% of the workday. AR 2587. Dr. Catlin concluded that M.M.'s "mental health condition and her impairments and inability to function in the work place would still exist [ ] even in the absence of her substance use disorder." AR 2584. Dr. Catlin further concluded that M.M. "will have great difficulty performing well and consistently in the work place." AR 2585.

The ALJ gave Dr. Catlin's opinion "partial weight" on the grounds that her findings did not support any marked limitations, significant absenteeism, or time off-task. AR 3373. The ALJ found that M.M.'s work activity throughout 2019 and 2020 and her reported recent work activity were inconsistent with extreme time off-task and absenteeism. *Id.* The ALJ further discounted Dr. Catlin's opinion for being a one-time evaluation that was inconsistent with the medical evidence of record since 2017, including the same mental status examinations he cited in discounting the other medical opinions. *Id.* The ALJ concluded that the record supported lesser limitations across the four functional areas. *Id.*

To the extent the ALJ gave Dr. Catlin's opinion less weight because he found it was inconsistent with M.M.'s work activity in 2019 and 2020 and "her reported recent work activity," relied on a one-time evaluation, and was inconsistent with prior mental status examinations, the Court finds that those reasons are not "specific and legitimate" or "clear and convincing," and are not supported by substantial evidence, for the reasons explained above. *See supra* sections III.A.1, A.4 & B.2.

In addition, the ALJ's assessment of Dr. Catlin's conclusions regarding M.M.'s marked limitations and how often M.M. would be absent or off-task is not supported by substantial

evidence. The ALJ's analysis of the "supportability" factor is limited to the statement, "[Dr. Catlin's] findings, while overall supportive of moderate limitations in each of the four functional areas, are not supportive of any marked limitations or significant absenteeism or time off-task." AR 3373. The ALJ did not explain *why* Dr. Catlin's findings supported moderate limitations but did not support marked limitations, significant absenteeism, or time off-task. Dr. Catlin explained her findings in a report that spanned multiple pages and broke down her ultimate conclusions on impairments into 32 different categories. *See* AR 2578-2589. With respect to her opinion that M.M. has marked limitations in her ability to interact with others, Dr. Catlin explained that M.M. "has difficulty interacting with people because of her depression, which has caused problems maintaining employment and problems with her relationships with friends and family." AR 2579. Dr. Catlin further noted that M.M. "has lost interest in other people or relationships and spends most of her time alone." AR 2584. As for Dr. Catlin's opinion that M.M. has marked limitations in her ability to concentrate, persist, or maintain pace, Dr. Catlin explained that M.M. "has difficulty concentrating and remembering to do important things," and that M.M. exhibited "disturbances in memory and executive functioning" and "difficulty with regulating her attention, planning and thinking out activities, and making decisions." AR 2579, 2584-2585. With respect to her opinion that M.M. has marked limitations in her ability to adapt or manage herself, Dr. Catlin explained that M.M. "has difficulty with hygiene and basic self-care activities because of her depression." AR 2579-2580. She further noted that M.M. "has a minimal capacity to adapt to changes in the environment or to demands that are not already part of her life" and that M.M.'s "impulse control, frustration tolerance, and appropriate responses to stress are all impaired." AR 2585. The ALJ failed to explain why he concluded that these findings and explanations did not support Dr. Catlin's conclusions regarding marked limitations or her conclusions about how often M.M. would be absent or off-task. *See Labryssa*, 2022 WL 2833981, at *7 (holding that the ALJ erred in rejecting Dr. Catlin's assessment of marked limitations where the ALJ only stated that "the doctor did not really provide much in the way of explanation as to why [the marked] level of limitation was appropriate" and the ALJ "fail[ed] to substantively engage with Dr. Catlin's assessment").

In sum, the ALJ's evaluation of Dr. Catlin's opinion is not supported by "specific and legitimate" or "clear and convincing" reasons, and is not supported by substantial evidence.

***

The record includes the opinions of five treating or examining physicians, each of whom assessed M.M. with marked limitations in at least two areas of work-related functioning during her period of sobriety beginning in 2017. All of these medical providers agree that M.M.'s disabling limitations would remain in the absence of substance use such that M.M.'s substance use is not a contributing factor material to her disability.[9] The ALJ's contrary conclusion is not supported by *any* medical opinion but is rather based on his own interpretation of the medical evidence. The ALJ erred by discounting the opinions of Drs. Mains, Franklin, Martin, Wiebe, and Catlin and "by 'playing doctor' in supplanting his own lay opinion in lieu of medical practitioners'." *Albert B. v. Kijakazi*, No. 22-cv-00865-EJD, 2023 WL 6462856, at *6 (N.D. Cal. Sept. 29, 2023) (holding ALJ erred in discrediting "the consistent and uniform opinions from all medical experts regarding the materiality of Plaintiff's DAA" and "rely[ing] heavily on his own interpretation of the record evidence and excerpts from a single treating psychologist"); *Norris*, 2025 WL 2373351, at *11 (holding ALJ erred in finding claimant's substance use material where "all of [claimant's] medical providers opined that substance use is not material to his disability").

The ALJ erred in assigning only "partial" or "little" weight to the opinions of Drs. Mains, Franklin, Martin, Wiebe, and Catlin without providing "specific and legitimate" or "clear and convincing" reasons supported by substantial evidence. Because the record establishes that DAA is not material to the determination of disability, the ALJ's contrary decision must be reversed. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

[9] The Court observes that these opinions are consistent with M.M.'s own testimony at three administrative hearings, each of which occurred during the post-2017 period of sobriety. *See, e.g.*, AR 1978-1984 (Sept. 18, 2018: M.M. testifying that she is sober and that she seeks treatment from Dr. Mains for anxiety symptoms, including talking to herself and difficulty sleeping); AR 1858-1866 (Feb. 14, 2023: M.M. testifying that she is sober and that she experiences auditory hallucinations and paranoia); AR 3416-3417 (Nov. 5, 2024: M.M. testifying that she is sober and that she experiences auditory hallucinations).

## IV. DISPOSITION

Having found that the ALJ committed reversible error, the Court proceeds to the question of remedy. M.M. argues that remanding for the calculation and award of benefits is appropriate in this case. Dkt. No. 17 at 24-25. The Commissioner argues that, upon reversal, further proceedings would be necessary to evaluate M.M.'s reasons for stopping her caregiving work for her partner in 2019 and 2020. Dkt. No. 23 at 20.

A district court may "affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (citation modified). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful;" and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations and quotations omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit-as-true" rule to an appropriate case). The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

The ALJ failed to provide legally sufficient reasons for concluding that M.M.'s substance use is material to her disability, and failed to properly consider the opinions of M.M.'s treating and examining medical sources. There are no outstanding issues to resolve. The record in this case totals more than 5000 pages, contains medical records from multiple providers spanning nearly a decade since M.M. applied for benefits, as well as M.M.'s testimony from three administrative hearings. As discussed earlier, the ALJ's conclusions regarding M.M.'s work in 2019 and 2020

United States District Court
Northern District of California

are not supported by substantial evidence. *See supra* section III.A.1. Given the other evidence in the record—particularly, the consensus among the treating and examining physicians regarding the severity of M.M.'s impairments—the reasons M.M. stopped serving as her partner's caregiver in 2020 are immaterial. The Commissioner does not identify any other matter that requires further development. The Court finds that the record does not need further development and that further administrative proceedings would not be useful.

Finally, on "the record as a whole," there is no doubt as to disability. *Garrison*, 759 F.3d at 1021. The ALJ's inability to articulate reasons supported by substantial evidence for finding M.M.'s substance use material to her disability and his inability to articulate "specific and legitimate reasons" or "clear and convincing reasons" for discounting the opinions of M.M.'s treating and examining medical providers after three rounds of administrative proceedings further supports the Court's conclusion that the longitudinal record raises no serious doubts as to M.M.'s disability.

For all of the above reasons, the Court sees no basis for serious doubt in the record that M.M. is disabled. Moreover, remand for benefits is appropriate, considering that M.M. first applied for benefits ten years ago, this case has already been remanded twice to the agency for further proceedings, and there is no indication that further proceedings would be useful. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted). The Court will remand for immediate calculation and payment of benefits.

## V. CONCLUSION

For the reasons explained above, M.M.'s appeal is granted. The Court reverses the ALJ's decision and remands the matter for immediate calculation and payment of benefits.

The Clerk shall enter judgment accordingly and close this file.

//

//

//

**IT IS SO ORDERED.**

Dated: September 4, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California